IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| **Plaintiff,** : | |
| : | NO. 23-CR-00409 (DLF) |
| v. : | |
| : | |
| **STEVEN BOYD BARBER** : | |
| **Defendant.** : | |

### DEFENDANT, STEVEN BOYD BARBER'S SENTENCING MEMORANDUM

The Defendant, Steven Boyd Barber, by and through his attorneys, the Mattioli Law Firm and attorney Michael J. Ossont, Esquire, respectfully submit this sentencing memorandum in connection with the above-captioned matter. Steven Boyd Barber has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. §5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. §5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For reasons set forth herein, Mr. Barber respectfully requests that this Honorable Court accept the recommendation of Probation and impose a probationary sentence.

1

## I.  Introduction

Mr. Barber is a 43-year-old who suffers from chronic back pain and mental health issues that hinder his ability to be employed. Mr. Barber has readily admitted that he was present on January 6, 2021 at the Capitol. However, contrary to the Government's argument, Mr. Barber did not cause injury to any of the more than one hundred police officers there that day, he did not damage or deface any property, and have taken responsibility for what he has done. Mr. Barber found himself overwhelmed in a crowd as they pushed towards the Capitol building. Mr. Barber readily admits, as evidenced by his plea in this matter, that once he was pushed inside, he should have made every effort to exit the building, however, he did not, he remained inside the Capitol Rotunda for approximately thirty (30) minutes. He was never told to leave but left on his own accord, not physically touching anyone, not causing damage to the Capitol itself but simply remaining inside.

## II.  Factual and Procedural Background

On January 6, 2021, Mr. Barber went to Washington, D.C. by bus to attend a rally with President Trump. While in Washington, D.C. and near the Capitol, it was apparent that people were gathering near the Capitol. At the point the people in the crowd entered the Capitol, Mr. Barber was overwhelmed by the crowd. Once inside, Mr. Barber now realizes he should have left the building immediately.

However, he remained inside and left on his own accord approximately thirty (30) minutes later.

Subsequently, Mr. Barber was interviewed at his residence in Tunkhannock, Pennsylvania by law enforcement. He admitted that he was in the Capitol on January 6, 2021. He informed those law enforcement officials that he "did nothing wrong" in that he did not use physical violence, he did not deface or damage the Capitol building and he left on his own. As noted in Mr. Barber's PSR, he has been diagnosed with Aspergers syndrome and suffers from Depression and other mental health issues. His treatment provider, Amy W. Clark, LCSW, explains that Mr. Barber would not have been fully aware of what was happening around him based on that diagnosis. It is clear that Mr. Barber did not travel to Washington, D.C. with the idea or intent to enter the Capitol Building that day.

On January 31, 2023, two years after the incident, Mr. Barber was arrested on a complaint for violating 18 U.S.C. §1752(a)(1) and (2) and 40 U.S.C. §§5104(e)(2)(D) and (G). On November 17, 2023, Mr. Barber was charged by a two-count information for violating 40 U.S.C. §5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. §5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two).

On January 12, 2024, Mr. Barber, pursuant to a plea agreement, pleaded to both counts of the Information. As part of that plea agreement, he agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Mr. Barber faces up to six months imprisonment and a fine of up to $5,000 on each count. As this Honorable Court is well aware, the sentencing guidelines do not apply to Class B Misdemeanors, as plead to here.

### IV.     Sentencing Factors Under 18 U.S.C. §3553(a)

In Misdemeanor cases such as this, sentencing is guided by 18 U.S.C. §3553(a), which identifies the factors a court must consider in formulating the sentence. In this case as described below, the Section 3533(a) factors support a probationary sentence being imposed.

#### A.     The Nature and Circumstances of the Offense

While the circumstances surrounding the entirety of what took place on the Capitol on January 6 may have endangered hundreds of federal officials in the Capitol complex as the Government suggests, nothing Mr. Barber did directly placed anyone in danger of injury. Nothing Mr. Barber did defaced or damaged any part of the Capitol building. Mr. Barber was caught in a crowd, swept inside and made the unwise choice of staying inside the Capitol building. At no point did he defy the directives of Capitol police, at no point did he act violently or with an

intent to damage any property. Mr. Barber takes full responsibility for the fact that he was inside the Capitol building for approximately thirty (30) minutes and knew that he should not be there. Mr. Barber left the property of his own accord never once even having spoken to or having any encounter with officials from the Capitol. He did not break windows or doors to gain entry. He did not physically assault anyone on the property or at all that day. He found himself in a bad situation, realized he should not have been there and left. He has taken responsibility for his actions that day and is remorseful for having been there at all.

### B.  Barber's History and Characteristics

As set forth in his PSR, Mr. Barber does not have any criminal history. It should be noted however that also in the PSR, it is reported the Mr. Barber suffers from Major Depressive Disorder, Severe, Recurring with Suicidality; Generalized Anxiety Disorder; and Gender Dysphoria. He actively participates in weekly outpatient treatment with Amy W. Clark, LCSW. Additionally, Mr. Barber is diagnosed with Autism Spectrum Disorder. At the time of his diagnosis between the ages of 18-20, he was officially diagnosed with Asperger's Syndrome. As noted by Ms. Clark, the symptoms of his diagnoses have been greatly enhanced by his involvement in the criminal justice system.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense

Mr. Barber's role on January 6, 2021 was minimal. Mr. Barber was not at the forefront of the entry made into the Capitol on that day. He was overwhelmed and caught up in a crowd. He realizes he never should have put that self in that position and knows that once inside he should have immediately left. It was never his intention to be a part of a riot or an event that would cause harm to police officers, damage the Capitol or anything of that nature. He travelled to Washington, D.C. to attend a rally and found himself pushed into the Capitol Rotunda. Once inside, Mr. Barber stayed and looked around for approximately thirty (30) minutes and left of his own accord. Mr. Barber understands the seriousness of what it meant for him to stay inside the Capitol Building at that time and has great remorse for what has happened. Based on his lack of a prior criminal history and the clear fact that Mr. Barber's involvement with the overarching incident on January 6, 2021 was minimal supports a probationary sentence in this matter.

### D. The Need for the Sentence to Afford Adequate Deterrence

A sentence of probation in that matter, for a Defendant who has no prior criminal history, no evidence of a clear intention to be involved in any violence towards anyone, or any intention of damaging anything within the Capitol is appropriate.

Mr. Barber found himself in a situation that led to him being in the Capitol Rotunda that day. Instead of leaving immediately, he remained inside for a period of time when he knew or should have known that it was not right for him to be there. For that he now faces sentencing before this Honorable Court. A probationary sentence or a sentence of any kind for the level of involvement Mr. Barber had in this incident is sure to deter others in his similar situation from committing acts like those that took place on January 6, 2021.

With respect to specific deterrence, Mr. Barber's involvement with this matter and the criminal justice system has been deterrence enough. His remorse for his involvement that day and his taking responsibility for his actions, show that he has learned from this experience. This is Mr. Barber's first and only brush with the law in 43 years of life. Mr. Barber, who is a generally quiet man who keeps to himself has been greatly affected, as he should, by the incident and the subsequent prosecution. Mr. Barber's involvement in this matter alone is sufficient to specifically deter Mr. Barber from being involved in any future criminal activity.

**E.    The Need to Avoid Unwarranted Sentencing Disparities**

As noted in the Government's Sentencing Memorandum, no previously sentenced January 6 case contains the same balance of aggravating and mitigating factors as present here.

The cases cited by the Government are distinguishable to the facts and circumstances here. In *United States v. Lattazi,* 22-cr-28 (TSC), the defendant remained in the Capitol for five (5) minutes and left when asked to do so by Capitol police. Later, he lied to the FBI before eventually telling the truth. Here, Mr. Barber entered the Capitol, remained in the Rotunda for approximately thirty (30) minutes, did not come into contact with any Capitol Police or anyone telling him to exit the building. Mr. Barber left of his own accord. When asked by law enforcement if he was there that day, he readily admitted that he was in the Capitol on January 6, 2021. He has been cooperative and has taken responsibility from the moment he was asked.

In *United States v. Frederick Skylor Webb*, 22-cr-225 (RCL), the defendant was sentenced to incarceration for entering the Senate Wing Door, filming the events spending approximately fourteen (14) minutes inside. The defendant in that case entered an area of the Capitol that directly affected the agenda that day. He recorded and prompted rioters within the Capitol. It is apparent that the defendant in that case was more involved in the penetration of the Capitol building and took the opportunity to record himself doing so. Mr. Barber entered the Capitol Rotunda, remained for thirty (30) minutes and walked out.

In *United States v. Derek Sulenta*, 22-cr-340 (TSC), the defendant remained inside the Capitol for forty-seven (47) minutes, livestreaming on social media and

bragging to his viewers about "breaching" the Capitol. Again, Mr. Barber did nothing of the sort. He found himself inside the Rotunda, remained inside and left of his own accord.

Mr. Barber never lied about being in the Capitol, never bragged about being in the Capitol and took responsibility for being there from the moment he was asked. The Government relies on Mr. Barber stating that he did "nothing wrong" to indicate that he has no remorse or does not take this incident seriously. As noted above, Mr. Barber's treatment provider indicated that regardless of Mr. Barber's political beliefs, Ms. Clark had no reason to believe that Mr. Barber was aware of what was actually happening on the date of the incident. In dealing with his diagnoses, it is difficult for him to express himself to others. Mr. Barber's doing "nothing wrong" doesn't mean that he wasn't inside of the Capitol that day as he readily admits it, but as noted by the Government as well, Mr. Barber was not violent, was not destructive and did not do anything to further advancement into the Capitol. A probationary sentence in this matter is appropriate.

**V.     Restitution**

As noted in both the plea agreement and the PSR, Mr. Barber has agreed with the Government to pay $500 in restitution to the Architect of the Capitol for his unlawful presence during the events that day.

## VI. Fines

As noted in the PSR, while Mr. Barber faces up to a $5,000.00 fine on each count he has pled guilty to in this matter, based on his financial assets Mr. Barber is unable, and is unlikely to become able to pay a fine.

## VII. Conclusion

In looking at the balance required under the §3553(a) factors, Mr. Barber respectfully requests that this Honorable Court adopt the recommendation of Probation and impose an aggregate twelve (12) month probationary sentence along with the payment of $500 restitution and any other conditions this Honorable Court deems appropriate. A probationary sentence in this matter is appropriate based on the very minimal role Mr. Barber played on January 6, 2021 while still achieving the deterrence required in these situations, promotes respect of the rule of law and protects the community. Additionally, a probationary sentence will allow Mr. Barber to continue his mental health treatment. Any term of incarceration could be very detrimental to his health and well-being. Mr. Barber takes full responsibility for his actions that day, is remorseful and has learned greatly from his mistakes.

Respectfully submitted,

/s/ Michael J. Ossont
Michael J. Ossont, Esquire
425 Biden Street, Suite 300
Scranton, PA 18503
Attorney ID#: 310437

DATE: May 14, 2024               Attorney for the Defendant